1
2
3
4
5
6
7
8
9
10
11
12

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID CECIL TUGGLE,

        Petitioner,              No. CIV S-00-2080 DFL JFM P

   vs.

ROSANNE CAMPBELL, Warden,

        Respondent.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1995 conviction on charges of possession of methamphetamine, Health & Safety Code § 11377(a), and the trial court found true special allegations that petitioner had suffered five prior strike convictions within the meaning of California's Three Strikes Law, Penal Code § 667(b)-(i) and 1170.12), and that petitioner had served two prior prison terms, Cal. Penal Code § 667.5.  Petitioner was initially sentenced to 27 years to life, but after remand, the sentence was set at 25 years to life.

      Petitioner claims that his constitutional rights were violated by (1) ineffective assistance of his first trial counsel, Connie Owens; (2) ineffective assistance of his second trial counsel, Paul Comiskey; (3) & (4) the prosecution failed to disclose favorable evidence to the defense; (5) prosecutorial misconduct; (6) denial of his right to compulsory process; (7) the sentencing court abused its discretion when it considered information the original sentencing judge had redacted; (8) trial court erred by failing to provide petitioner with a court trial on his prior convictions; (9) ineffective assistance of appellate counsel; (10) fundamentally unfair trial

1

and sentencing due to cumulative errors; (11) petitioner's sentence violated the prohibition against a bill of attainder; (12) application of Three Strikes Law to petitioner was violation of ex post facto clause; (13) petitioner's sentence and the $10,000 fine were cruel and unusual punishment; (14) petitioner's sentence was excessive and disproportionate to the crime; (15) petitioner's prior strike conviction was unconstitutional; and (16) the failure of the state court to properly apply the Three Strikes Law to petitioner violated his equal protection and due process rights.

FACTS[1]

> Officer Smith saw [petitioner] speeding on the freeway and stopped him for the traffic violation. After obtaining [petitioner's] license and registration, Smith asked if he was on probation or parole; [petitioner] responded that he was on parole. Smith then asked [petitioner] to step out of the van, and they walked back to Smith's patrol car as it was not safe to stand at the roadside near the traffic.
>
> Smith inquired whether [petitioner] had any weapons. [Petitioner] replied that he "had something he shouldn't have." Believing [petitioner] had a weapon, Smith conducted a pat down search, found a set of "brass knuckles" in [petitioner's] back pocket, and arrested him.
>
> Following the arrest, Smith searched [petitioner] and found a baggie containing .11 grams of methamphetamine in [petitioner's] watch pocket. Smith estimated that perhaps two minutes elapsed from the time he stopped the van until [petitioner] was arrested.
>
> [Petitioner] suffered five prior serious felony convictions in 1986, including two counts of rape (§ 261 subd. (a)(2)), two counts of oral copulation with a person under the age of 14 (§ 288a, subd. (c)), and one count of penetration of a genital or anal opening with a foreign object (§ 289, subd. (a)). These offenses involved two different girls at two different times. [Petitioner] served a separate prison term for rape in 1986 and for receiving stolen property (§ 496) in 1992.

(People v. Tuggle, slip op. at 2-8.)

---

[1]  The statement of facts is taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Tuggle, No. C022401 (February 25, 1997), a copy of which is appended as Exhibit 3 to Respondent's Answer, filed March 7, 2001.

2

ANALYSIS

I.  <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

1  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2  habeas court independently reviews the record to determine whether habeas corpus relief is

3  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4  II.  Petitioner's Claims

5       A.  Ineffective Assistance of Trial Counsel

6         The standards applicable to petitioner's ineffective assistance of counsel claim

7  were established by the Supreme Court in Strickland v. Washington, 466 U.S. 688 (1984).  In

8  order to prevail on the claim petitioner must show (1) an unreasonable error by counsel and (2)

9  prejudice flowing from that error.  To satisfy the first prong, petitioner must show that,

10  considering all the circumstances, counsel's performance fell below an objective standard of

11  reasonableness.  The court must determine whether in light of all the circumstances, the

12  identified acts or omissions were outside the wide range of professionally competent assistance.

13  Id. at 690.  "Review of counsel's performance is highly deferential and there is a strong

14  presumption that counsel's conduct fell within the wide range of reasonable representation."

15  United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986).

16         To meet the prejudice prong, petitioner must show that "there is a reasonable

17  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

18  been different."  Strickland, 466 U.S. at 694.  A reasonable probability is "a probability sufficient

19  to undermine confidence in the outcome."  Id.  The focus of the prejudice analysis is on "whether

20  counsel's deficient performance renders the result of the trial unreliable or the proceeding

21  fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

22  /////

23       (1) First trial counsel

24         Petitioner contends his first trial counsel was ineffective for failing to pursue

25  discovery of the "missing first 15 minutes of the police dispatch recording beginning at 1330 on

26  November 7, 1994."  (Pet. at 3.)  Petitioner argues (in his third claim) that the officer discovered

1   petitioner was a parolee by running petitioner's license plate and then fabricated a traffic

2   violation in order to justify the unreasonable stop, detention and subsequent search and seizure.

3   (Pet. at 5.)  Petitioner contends that if his counsel had obtained that tape, the evidence against

4   him would have been suppressed and he would not have been convicted.

5           The last reasoned state court decision on this claim was the September 16, 1998

6   decision of the Sacramento County Superior and Municipal Court.  (Answer, Ex. 12.)  That court

7   found that petitioner had failed to demonstrate that the contents of the missing tape recording of

8   the 15 minute conversation between Officer Smith and dispatch would be exculpatory.  (Id. at 1.)

9   Even if petitioner were correct, that Officer Smith had another motive for making the traffic stop,

10  the state court found this was not constitutionally impermissible.  Whren v. United States, 517

11  U.S. 806 (1996).  While applying the Strickland standard, the state court found that this missing

12  tape would not have changed the outcome of the search and seizure motion because "Officer

13  Smith was justified in making a pretextual stop, as he observed petitioner speeding and that was

14  a proper ground on which to effectuate the stop."  (Answer, Ex. 12, at 2.)

15          Despite petitioner's arguments to the contrary, Whren is applicable here.  The

16  actual motivations of the individual officers for making the stop of the car are irrelevant since

17  "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."

18  Whren, 517 U.S. at 813.  Whren also relied on United States v. Robinson, 414 U.S. 218 (1973),

19  for the proposition that "a traffic-violation arrest . . . [will] not be rendered invalid by the fact that

20  it was 'a mere pretext for a narcotics search.' " 517 U.S., at 812-813.

21          Because the missing tape recording would not have changed the outcome of the

22  suppression hearing, petitioner cannot demonstrate the prejudice prong of Strickland, and the

23  court need not address the first prong.  The state courts' rulings on this claim were not contrary to

24  nor an unreasonable application of federal law not based on an unreasonable interpretation of the

25  facts.  Petitioner's first claim should be denied.

26  /////

1          (2) Retained trial counsel

2          Petitioner raises nine separate claims of ineffective assistance of retained trial

3   counsel.  The first four claims relate to the missing dispatch tape referenced above.  First,

4   petitioner claims trial counsel was ineffective for failing to ensure the production of the missing

5   tape.  Second, petitioner claims counsel was ineffective for failing to present the missing tape at

6   the motion to suppress hearing.  Third, petitioner alleges counsel was ineffective for failing to

7   file additional motions regarding the loss or destruction of the missing tape.  Fourth, petitioner

8   alleges trial counsel was ineffective by preventing effective review of his Fourth Amendment

9   claim regarding the tape by failing to provide appellate counsel with all of petitioner's evidence.

10          These four claims of ineffective assistance of counsel were raised and rejected in a

11  petition filed in the California Supreme Court, which was denied in an order that contained no

12  statement of reasons for the decision.  In this circumstance, an independent review of the record

13  is required "to determine whether the state court clearly erred in its application of controlling

14  federal law."  Delgado, 223 F.3d at 982; Wilcox, 241 F.3d at 1245.

15          Even assuming petitioner's first four ineffective assistance of retained counsel

16  claims were true, petitioner cannot demonstrate prejudice from any of these four claims.  As

17  noted above, this evidence would not have made a difference in terms of the admission of the

18  methamphetamine under Whren, supra.  Petitioner's first three claims against retained trial

19  counsel fail for the same reason his first claim against his first trial counsel failed.  (See Section

20  (1) at 5-6 above.)  Petitioner cannot demonstrate that had his retained trial counsel taken the

21  actions suggested by petitioner's first three claims, the outcome of his trial would have been

22  different.  A lawyer need not file a motion that he knows to be meritless on the facts and the law.

23  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.1999); Lowry v. Lewis, 21 F.3d 344, 346 (9th

24  Cir.), cert. denied, 513 U.S. 1001 (1994) (failure to file suppression motion not ineffective

25  assistance where counsel investigated filing motion and no reasonable possibility evidence would

26  /////

1  have been suppressed); see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.1996), cert. denied,

2  519 U.S. 1142 (1997) (failure to take futile action can never be deficient performance).

3        As to petitioner's fourth claim, the court notes that petitioner failed to demonstrate

4  that retained trial counsel possessed the missing tape.  In the Sacramento Superior Court's

5  December 7, 1998 order denying petitioner's motion to direct trial counsel to provide petitioner

6  with certain trial evidence, the judge stated that petitioner failed to demonstrate trial counsel ever

7  had the missing tape and noted that petitioner failed to make a proper showing that the tape ever

8  existed at all.  (Answer, Ex. 17.)  The Superior Court judge also noted that petitioner declared in

9  his habeas petition that the prosecution had not turned the tape over to trial counsel and that

10  retained trial counsel had stated he had not received the tape.  (Id.)  In petitioner's traverse,

11  petitioner recounts retained trial counsel's statements to the trial court at the suppression hearing

12  that trial counsel had "asked for those [tapes] a number of times, and was told by the District

13  Attorney's office that there was never any tapes or records of any dispatches" (Traverse at 26), so

14  he was "personally satisfied that there weren't."  (Id.)  This confirms that retained trial counsel

15  did not have the missing tape in his possession, and thus could not be ineffective for failing to

16  turn over evidence he did not have.

17        Moreover, even if trial counsel had possession of evidence he failed to turn over,

18  there is no evidence that counsel would have had a meritorious Fourth Amendment claim.  See

19  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) (in order to prevail on such a claim,

20  petitioner must show a "good Fourth Amendment claim" and that he was denied a fair trial by the

21  "gross incompetence" of counsel.)  As noted above, even if the Officer's subjective intent was to

22  pull over petitioner because petitioner was on parole, the Officer's statement that he saw

23  petitioner speeding and pulled petitioner over for speeding was a proper ground on which to

24  effectuate the stop.  Thus, petitioner cannot demonstrate that had trial counsel turned over the

25  missing tape to appellate counsel, his appeal would have been granted.  Petitioner's fourth claim

26  must also fail.

1    Thus, petitioner's four claims of ineffective assistance of retained trial counsel

2  should be denied.

3    Petitioner next claims his retained trial counsel was ineffective for failing to either

4  object to or dispute alleged false evidence presented at sentencing in the probation officer's

5  report.  The Sacramento Superior Court's September 16, 1998 order rejected this claim, finding

6  that petitioner could not establish prejudice under Strickland.  (Answer, Ex. 12, at 2-3.)

7    [E]ven if deficient performance were shown, . . . petitioner fails to
   establish prejudice.  As the probation report indicates, petitioner
8    has a lengthy criminal history, including numerous prior sex
   offenses, and petitioner was on parole at the time of the current
9    offense.  Petitioner's 25-years-to-life sentence was mandatory
   under the "Three Strikes" law, and it would have taken a striking
10   of at least four of his "strike priors" for the sentence to have been
   any different.  Petitioner simply fails to show that, despite his
11   criminal history and the fact that he was on parole at the time of
   this offense, it would have been an abuse of discretion not to strike
12   at least four priors, had the specific details of the San Joaquin
   priors not been given in the probation report.  Thus, again,
13   petitioner fails to meet the Strickland standard for prejudice.

14  (Answer, Ex. 12, at 3.)

15    The state court properly applied Strickland; thus its ruling on this claim was not

16  contrary to nor an unreasonable application of federal law not based on an unreasonable

17  interpretation of the facts.  Petitioner's fifth claim of ineffective assistance of retained trial

18  counsel should be denied.

19    Petitioner's sixth claim of ineffective assistance of retained trial counsel is that

20  trial counsel failed to allow adequate time for petitioner to review the probation officer's report

21  before sentencing.  The state court again found petitioner had not demonstrated prejudice under

22   Strickland.  (Answer, Ex. 12, at 4.)  In addition, the state court noted that petitioner had another

23  chance to address these issues at the Romero[2] remand, which petitioner did.  (Id.)

24

25    [2]  People v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal. Rptr. 2d 789,
   791-92 (1996).

26

1  Petitioner has failed to explain how additional time to review the probation

2  officer's report before sentencing would have changed the outcome of sentencing.  Thus,

3  petitioner has failed to meet the prejudice prong of Strickland and this claim should also be

4  denied.

5  In his seventh claim, petitioner contends retained trial counsel failed to object or

6  defend petitioner against an excessive restitution fine.  The California Court of Appeal denied

7  this claim, finding that petitioner had not met his burden under Strickland.

8       The record is silent on counsel's motivation, and we cannot
   determine whether failure to challenge the restitution fine was the

9       result of inadequate representation.  Because it is conceivable that
   [petitioner], who was employed at the time he committed the

10       crime, may have had resources to pay all or a portion of the fine,
   and since counsel may have recognized [petitioner] has the ability

11       to earn wages in prison which could be applied toward its payment,
   [petitioner] is not entitled to reversal of the fine in this appeal.

12       [Citation omitted.]

13  (Opinion at 6.)

14  Moreover, the court noted that the trial court was required to impose a restitution

15  fine when a defendant is convicted of a felony.  (Opinion at 5.)  The Sacramento County Superior

16  Court agreed with the appellate court's finding, adding that petitioner had "failed to set forth any

17  rationale for his claim of the restitution being excessive, and fail[ed] to show how the amount of

18  restitution ordered would have been different had counsel objected."  (Answer, Ex. 12, at 4.)

19  The state courts properly applied Strickland; thus its ruling on this claim was not

20  contrary to nor an unreasonable application of federal law not based on an unreasonable

21  interpretation of the facts.  Petitioner's seventh claim of ineffective assistance of retained trial

22  counsel should be denied.

23  Petitioner's eighth claim of ineffective assistance of retained trial counsel is that

24  counsel failed to review and prepare for sentencing after the first remand from the Court of

25  Appeal.  The Sacramento County Superior Court addressed this claim as follows:

26  /////

1         [P]etitioner has attached documents as exhibits, setting forth what
he thought should have been argued and presented at the 1997

2         <u>Romero</u> remand.  Much of this material, however, was already
included in the original probation report, which was available . . .

3         at the <u>Romero</u> remand:  (1) petitioner's age, (2) the nature of
petitioner's current crime, being possession of methamphetamine,

4         (3) petitioner's criminal history, (4) petitioner's drug/alcohol
history, (5) petitioner's joining the Navy, (6) petitioner's parole in

5         1993 and the fact that he did not test positive for drugs until
November 1994, and (7) petitioner's then-current employment as a

6         truck driver.  Petitioner's claim that matters stricken from the
record in the San Joaquin County case were impermissibly

7         included in the probation report are unfounded, as discussed above.
Further, at the <u>Romero</u> remand, the parties referred to the hearing

8         that had been held at the original sentencing, at which defense
counsel presented three witnesses to attest to petitioner's good

9         character and to his drug/alcohol addiction, as well as petitioner's
own testimony asking for leniency, in hopes of convincing the

10         Court to sentence him to a misdemeanor instead of a felony for the
"wobbler" offense of which he had been convicted.  The additional

11         material presented in the petition, in this regard, would at most
have been cumulative, had it been presented at the <u>Romero</u> remand

12         hearing.

13         . . .

14         Because petitioner fails to set forth any material that counsel could
have, but did not, present to the court at the Romero remand that

15         would have made any difference in the outcome of the
resentencing, this . . . ineffective assistance of counsel [claim] must

16         also fail for failure to state a prima facie case under Strickland.

17 (Answer, Ex. 12, at 4-5.)

18         "[P]ronouncement of sentence on a foundation 'extensively and materially false . .

19 . renders the proceeding lacking in due process.'"  <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395 (9th

20 Cir. 1989)(quoting <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948).  In order to demonstrate a due

21 process violation, petitioner must show "1) that the challenged information is materially false or

22 unreliable [citation omitted]; and 2) that the sentencing judge relied, at least in part, on this

23 information [citation omitted]."  <u>Oxborrow</u>, 877 F.2d at 1400.  "Where the court does not rely on

24 the challenged information, the sentence will be affirmed regardless of the accuracy of the

25 challenged information." <u>Oxborrow</u>, 877 F.2d at 1400 (Citations omitted.).

26 /////

1    Here, petitioner has failed to demonstrate that material information was false or

2   that the trial judge relied on that false information.  Moreover, petitioner has failed to show that

3   the outcome would have changed had this allegedly false information been removed from the

4   record.  A review of the record reflects that the trial judge was adamant about refusing to exercise

5   his discretion to strike any of petitioner's prior convictions as strikes imposed under the Three

6   Strikes Law.  (Pl.'s Ex. 1-H, at 1080-94.)  The trial judge acknowledged that the sentence

7   imposed was harsh, but found petitioner's prior convictions were for violent offenses.  (Id. at

8   1086.)  Thus, petitioner has again failed to meet the prejudice prong of Strickland, and his eighth

9   claim of ineffective assistance of retained trial counsel should be denied.

10    In his ninth and final claim of ineffective assistance of retained counsel, petitioner

11   alleges counsel was ineffective for failing to appear at petitioner's re-sentencing following the

12   second remand from the state Court of Appeal.[3]  (Pet. at 4.)  On this claim, petitioner cannot

13   demonstrate prejudice under Strickland.

14    On June 16, 1998, the California Court of Appeal vacated the order imposing two

15   1-year terms for the two prior prison term enhancements and remanded the case to the trial court

16   to permit the court to exercise its discretion whether to strike the punishment imposed for either

17   or both of the enhancements and, if necessary, to reimpose petitioner's sentence.  (Answer, Ex. 6,

18   at 7-8.)  On July 31, 1998, petitioner returned to state court for re-sentencing pursuant to the June

19   16 remittitur.  (Pl.'s Ex. I-H, at 1089.)  The record reflects that petitioner's retained trial counsel

20   was tied up in Department 1 arguing a homicide three strikes Romero hearing.  (Id. at 1093.)

21   The trial judge also noted that petitioner had been represented by other counsel on appeal.  (Id. at

22   1089.)  After waiting for trial counsel who did not appear, the trial judge noted that petitioner had

23   made a Marsden motion and told petitioner he could fire trial counsel if he wanted.  (Id.)  The

24   trial judge went on to state that since he would be exercising discretion in petitioner's favor with

25   _____

26    [3]  Petitioner does not claim that the trial court erred by depriving him of counsel at this re-sentencing hearing.

1    regard to the two one-year prior prison sentence enhancements, petitioner could proceed on his

2    own.  (Id. at 1090.)  The trial judge then exercised his discretion and did not impose the two

3    additional one-year terms.  (Id.)

4        Based on that result, petitioner cannot demonstrate prejudice under Strickland.

5    Petitioner cannot demonstrate that if he had benefit of counsel at the re-sentencing hearing, the

6    outcome would have been better.  The second remand was for the limited purpose of deciding

7    whether to reimpose sentence on the two one-year enhancements for petitioner's prior prison

8    terms, and the trial judge chose not to reimpose that sentence.  Thus, petitioner's ninth claim of

9    ineffective assistance of retained trial counsel must also fail.

10        B.  Failure to Disclose Favorable Evidence

11        In his third claim, petitioner contends the prosecution failed to disclose evidence

12    favorable to the defense.  Respondent argues this claim is barred by the doctrine of procedural

13    default because petitioner failed to raise it on direct appeal.  In re Dixon, 41 Cal.2d 756 (1953).

14    Because petitioner could have raised this claim on appeal but did not, and this claim does not fit

15    within any of the exceptions set forth in Dixon, this claim is procedurally barred from

16    consideration on habeas review.

17        The Sacramento County Superior Court went on to find that even if it could reach

18    the merits of this claim, the claim would be rejected because petitioner failed to demonstrate that

19    the missing tape recording of Officer Smith and dispatch would be exculpatory.  (Answer, Ex.

20    12, at 1.)

21        Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d
        215 (1963), prosecutors have a duty to disclose exculpatory
22        material on their own, without a request by the defendant.  Brady
        material includes evidence that would help to impeach a
23        prosecution witness.  See United States v. Brumel-Alvarez, 991
        F.2d 1452, 1461 (9th Cir.1992).  However, a defendant must also
24        show that "there is a reasonable probability that, had the evidence
        been disclosed to the defense, the result of the proceeding would
25        have been different."  United States v. Bagley, 473 U.S. 667, 668,
        105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

26

1   Randolph v. People of the State of California, __ F.3d __, 2004 WL 1852899, slip op. at 11 (9th

2   Cir. Aug. 19, 2004). "Brady does not require a prosecutor to turn over files reflecting leads and

3   ongoing investigations where no exonerating or impeaching evidence has turned up." Downs v.

4   Hoyt, 232 F.3d 1031, 1037 (9th Cir. 2000) (citing, inter alia, United States v. Agurs, 427 U.S. 97,

5   109 (1976)). Moreover, "a constitutional error occurs, and the conviction must be reversed, only

6   if the evidence is material in the sense that its suppression undermines confidence in the outcome

7   of the trial." Bagley, at 678; see also Strickler v. Greene, 527 U.S. 263, 281 (1999) ("[T]here is

8   never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable

9   probability that the suppressed evidence would have produced a different verdict.")

10          As noted above, the state court found that this missing tape would not have

11  changed the outcome of the search and seizure motion because "Officer Smith was justified in

12  making a pretextual stop, as he observed petitioner speeding and that was a proper ground on

13  which to effectuate the stop."  (Answer, Ex. 12, at 2, citing Whren v. United States, 517 U.S. 806

14  (1996).  Because this evidence would not have been exculpatory, it was not misconduct for the

15  prosecutor to fail to disclose the missing tape.  Petitioner's third claim should be denied.

16          C.  Prosecutor's Failure to Disclose Discovery

17          In his fourth claim, petitioner again argues that the prosecutor's failure to produce

18  the missing tape denied him due process by depriving him of a meritorious defense.  (Pet. at 5.)

19  However, as noted above, because this evidence was not exculpatory in nature, this claim must

20  also fail.

21          D.  Prosecutorial Misconduct

22          In his fifth claim, petitioner claims he suffered prosecutorial misconduct by the

23  presentation of "false" evidence.  Petitioner cites three instances in support of his prosecutorial

24  misconduct claim:

25          1.  At the August 7, 1995, hearing on petitioner's motion to suppress, during the

26  prosecution's cross-examination of petitioner, the prosecution asked petitioner whether he had

1    been convicted of one count of oral copulation with a person under fourteen years of age with

2    force. (Pet., Ex. 1D, at 47.)  Petitioner correctly answered no.  Petitioner had previously been

3    convicted of oral copulation, and later admitted to prior convictions for rape and dissuading a

4    witness.

5            2.  At petitioner's sentencing hearing following trial, the prosecutor reminded the

6    trial judge that petitioner had committed several prior sexually violent crimes including two

7    counts of oral copulation with minors.  (Pet., Ex. 1F, at 63.)  The prosecutor stated these crimes

8    occurred in 1986, but the crimes actually occurred in 1984, which resulted in petitioner's later

9    conviction of the crimes in 1986.

10           3.  Petitioner's third example also involves sentencing.  Petitioner had objections

11   to the Probation Officer's 1986 report, which he raised at sentencing on the original offenses in

12   1986.  Petitioner's objections concerned inaccurate factual information relating to petitioner's

13   convictions arising from the rape and oral copulation of then 16 year old Noelle and petitioner's

14   attempt to dissuade her from being a witness which directly followed the sexual assault.[4]  The

15   /////

16   trial judge made minor additions and deletions to the report to comport the Probation Report to

17   the facts adduced at trial.

18           However, when the instant action was tried, the judge was presented with the

19   unedited version of the Probation Report.

20           Petitioner claims these instances, taken together with the allegedly missing tape

21   discussed above, amount to prosecutorial misconduct

22

23       [4] Petitioner sets forth the disputed facts in his seventh claim:  "The false facts actually in
24   question are:  (1) 'the victim was forcibly pulled into the defendant's vehicle,' and 'using a piece
     of glass as a weapon threatened the victim with death.'"  (Petition at (5)(g).)  Petitioner claims
     these "false facts" were stricken from the 1986 Probation Report at sentencing.  Id. (citing
25   Clerk's Supplemental Transcript on Appeal, #C022401 (January 24, 1996)(augmented), at 28-37;
     41-80; see also petitioner's Ex. 2E, at 78-85.)  A copy of the probation report, with the
26   handwritten redactions is appended as Exhibit 21 to the Petition.

1    The California Supreme Court denied this claim without comment.

2    Success on a claim of prosecutorial misconduct requires a showing that the

3    conduct so infected the trial with unfairness as to make the resulting conviction a denial of due

4    process.  Greer v. Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to determine

5    "whether, considered in the context of the entire trial, that conduct appears likely to have affected

6    the jury's discharge of its duty to judge the evidence fairly."  United States v. Simtob, 901 F.2d

7    799, 806 (9th Cir. 1990).   Generally, if an error of constitutional magnitude is determined, a

8    harmless error analysis ensues.  Error is considered harmless if the court, after reviewing the

9    entire trial record, decides that the alleged error did not have a "substantial and injurious effect or

10   influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

11   Error is deemed harmless unless it "is of such a character that its natural effect is to prejudice a

12   litigant's substantial rights."  Kotteakos v. United States, 328 U.S. 750, 760-761 (1946).

13   In the instant case, none of the instances cited by petitioner took place before the

14   jury.  Thus, petitioner has not demonstrated that these instances, even accumulated, affected the

15   jury's discharge of its duty to judge the evidence fairly.  Accordingly, the state court's rejection

16   of petitioner's claim of prosecutorial misconduct was neither contrary to, nor an unreasonable

17   application of, the foregoing principles.  Petitioner's third claim for relief should be denied.

18   E.  Denial of Compulsory Process

19   Petitioner alleges in his sixth claim that he was denied his right to compulsory

20   process.  Petitioner bases this claim on the alleged missing portion of the audiotape which he

21   again claims would prove the officer fabricated his reason for stopping petitioner's car.

22   The Sixth Amendment compulsory process clause "does not by its terms grant to a

23   criminal defendant the right to secure the attendance and testimony of any and all witnesses:  it

24   guarantees him compulsory process for obtaining *witnesses in his favor*."  United States v.

25   Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (Valenzuela-Bernal ) (internal quotations omitted,

26   emphasis in original).  As discussed above, there is no showing by petitioner that he was

deprived of testimony or evidence that would have been "*relevant* and *material* [and] *vital*" to his defense. Valenzuela-Bernal, 458 U.S. at 867 (emphasis in original).  The actual motivation of Officer Smith for making the stop of petitioner's car was irrelevant because his "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813.  In addition, Officer Smith testified that he had no prior knowledge of petitioner's parole status until after he stopped petitioner's car and asked petitioner.  (Answer, Ex. 16, at 6.) Thus, petitioner cannot demonstrate the allegedly missing audiotape, even if it existed, was material to his defense, and his Sixth Amendment compulsory process claim fails.

 F. Abuse of Discretion

  In his seventh claim, petitioner contends the initial sentencing court abused its discretion when it considered false statements made by the prosecution and that the subsequent sentencing court abused its discretion when it considered information the original sentencing judge had redacted from the probation report.[5]

  Although a sentencing judge has broad discretion to hear a variety of evidence normally inadmissible during trial, pronouncement of sentence on a foundation "extensively and materially false . . . renders the proceeding lacking in due process." Townsend v. Burke, 334 U.S. 736, 741 (1948).  The Ninth Circuit Court of Appeal has developed a two prong test which criminal defendants must meet to show a due process violation.  The defendant must show 1) that the challenged information is materially false or unreliable. Farrow v. United States, 580 F.2d 1339, 1359 (9th Cir.1978) (en banc); and 2) that the sentencing judge relied, at least in part, on this information. Id. at 1359; United States v. Rachels, 820 F.2d 325, 328 (9th Cir.1987) (per curiam).  "Where the court does not rely on the challenged information, the sentence will be affirmed regardless of the accuracy of the challenged information." Rachels, 820 F.2d at 328

---

[5] Petitioner again raises prosecutorial misconduct and ineffective assistance of counsel arguments surrounding these issues.  These arguments are addressed in their respective sections herein.

1   (citing United States v. Gonzales, 765 F.2d 1393 (9th Cir.1985), cert. denied, 474 U.S. 1068

2   (1986)).  If the sentencing court states on the record that it excluded certain information from

3   consideration when making the sentencing decision, the reviewing court must take such

4   statements at face value.  Gonzales, 765 F.2d at 1397.

5            As discussed in the prosecutorial misconduct section above, the prosecution asked

6   petitioner whether he had been convicted of one count of oral copulation with a person under

7   fourteen years of age with force, and petitioner correctly answered no.  And, at petitioner's

8   sentencing hearing following trial, the prosecutor reminded the trial judge that petitioner had

9   committed several prior sexually violent crimes including two counts of oral copulation with

10  minors.  (Pet., Ex. 1F, at 63.)  The prosecutor stated these crimes occurred in 1986, but the

11  crimes actually occurred in 1984.

12           Although the prosecutor made these incorrect statements to the sentencing judge,

13  petitioner has provided no evidence that the trial judge relied on them in reaching his decision on

14  sentencing.  The sentencing judge had the probation report which accurately reflected the date

15  and penal code sections denoting petitioner's prior convictions.  (Petition, Ex. 21 at 1.)

16           Insofar as the redactions from the probation report, petitioner has not

17  demonstrated that the subsequent sentencing judge relied on the previously redacted portions of

18  the probation report to find that his prior convictions for oral copulation and rape were

19  sufficiently violent to justify a three strikes sentence.  The unredacted portions of the probation

20  report offer sufficient facts to support a finding of violence; however, the nature of the offenses

21  alone is sufficient to qualify the offense as violent under the three strikes law.  Thus, the

22  sentencing judge was not required to rely on the redacted facts, even had petitioner demonstrated

23  the judge had so relied.

24           In light of the above, this court cannot find that the judges abused their discretion,

25  and this claim should also be denied.

26  /////

G.  Prior Convictions

Petitioner contends in his eighth claim that the trial court denied him due process by failing to advise petitioner, prior to court trial on his prior convictions, of his right to subpoena witnesses, to confront and cross-examine witnesses, to present evidence in his own behalf, and/or to remain silent.  (Petition at (5)(h), citing Ex. 1E, at 58-60.)  Petitioner cites Boykin v. Alabama, 395 U.S. 238 (1969) in support of this claim.

However, Boykin sets forth the requirements for plea-advisements by counsel; that is, federal due process requires that a guilty plea be knowing and voluntary, that the defendant must have "a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 243-44.  Here, petitioner did not admit to his prior convictions, but stipulated to have his prior convictions submitted to the trial judge for decision.  Thus, Boykin is not applicable here.  Thus, petitioner's eighth claim should be denied.

H.  Ineffective Assistance of Appellate Counsel

In his ninth claim, petitioner alleges ineffective assistance of appellate counsel.

To demonstrate ineffective assistance of appellate counsel, petitioner must demonstrate: (1) that his counsel was objectively unreasonable in failing to find arguable issues to appeal; and (2) a reasonable probability that, but for his counsel's unreasonable failure to find such issues, he would have prevailed on his appeal.  Smith v. Robbins, 528 U.S. 259, 285 (2000).

I.  Cumulative Errors

In his tenth claim, petitioner alleges he had a fundamentally unfair trial and sentencing due to cumulative errors.

"[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  Indeed, "there can be no such thing as an error-free, perfect trial."  United States v. Hasting, 461 U.S. 499, 508-09 (1983).  However, "prejudice may result from the cumulative impact of multiple deficiencies."  Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc), cert. denied, 440 U.S. 974 (1979).

While individual errors looked at separately may not rise to the level of constitutional error, the cumulative effect of such errors may so prejudice the defendant's right to a fair trial that reversal is warranted.  <u>See</u> <u>United States v. Berry</u>, 627 F.2d 193, 200-01 & n.7 (9th Cir. 1980), <u>cert. denied</u>, 449 U.S. 1113 (1981); <u>see also</u> <u>United States v. Nadler</u>, 698 F.2d 995, 1002 (9th Cir. 1983).

Petitioner argues that all of the alleged violations combined to render his trial fundamentally unfair, in violation of his federal due process rights.  For the reasons set forth above, this court has not found constitutional errors in petitioner's state trial proceedings.  Thus there is nothing to accumulate as error.  This claim should also fail.

J.  Bill of Attainder

In his eleventh claim, petitioner contends his sentence violated the prohibition against a bill of attainder.  A bill of attainder involves a statute imposing punishment without the benefit of trial.  <u>Nixon v. Administrator of Gen. Servs.</u>, 433 U.S. 425, 468 (1977)).  Three requirements must be met to establish a violation of the bill of attainder clause:  it must single out an identifiable group, inflict punishment, and dispense with a judicial trial.  <u>Id.</u>, at 468; <u>Selective Serv. Sys. v. Minnesota Pub. Interest Research Group</u>, 468 U.S. 841, 847 (1984).

These three elements are not present in the Three Strikes Law.  For example, the Three Strikes Law does not dispense with a judicial trial.  Petitioner was entitled to and did have a jury trial on his underlying prior convictions.  In addition, in order to be counted as a strike, prior convictions must be proven by a jury, or by the court, if the criminal defendant waives jury trial.  Here, petitioner waived his right to a jury trial on his prior convictions, and submitted the issue of his prior convictions to the trial judge.  Thus, petitioner was not deprived of a judicial trial, and the application of the Three Strikes Law to his sentence was not a bill of attainder.  This claim should also be denied.

K.  Three Strikes Law

a.  Ex Post Facto

1      In his twelfth claim, petitioner alleges application of the Three

2 Strikes Law to his sentence was a violation of the ex post facto clause.

3      Petitioner's twelfth claim is without merit.  "[R]ecidivist statutes do not violate

4 the Ex Post Facto Clause if they are 'on the books at the time the [present] offense was

5 committed.'" United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999) (quoting United

6 States v. Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1989) (per curiam)), cert. denied, 120

7 S.Ct. 1561 (U.S. 2000).  California's three strikes law was enacted in 1982, and amended in

8 1986, 1989, and 1994.  Petitioner's present offense was committed in 1994.  Petitioner's twelfth

9 claim for relief is without merit.

10      b.  Cruel and Unusual Punishment & Excessive and Disproportionate

11 Sentence

12      Petitioner contends in his thirteenth claim that his sentence and the $10,000 fine

13 were cruel and unusual punishment and in his fourteenth claim that his sentence was excessive

14 and disproportionate to the crime.  Petitioner contends that his sentence of 25 years in prison

15 amounts to cruel and unusual punishment prohibited by the Eighth Amendment.

16      Petitioner was sentenced pursuant to California's three-strikes law, which requires

17 enhanced penalties for certain repeat offenders.  See California Penal Code §§ 667, 1170.12.

18 Petitioner was convicted of possession of a controlled substance by a jury verdict on August 9,

19 1995.  (Petition at 1.)  The trial court found true special allegations that petitioner had suffered

20 five prior strike convictions within the meaning of the three-strikes law (Penal Code §§ 667(b)-

21 (i) and 1170.12) and that petitioner had served two prior prison terms (Penal Code § 667.5).

22 (Answer at 2.)  The trial court initially sentenced petitioner to 27 years to life, but that was later

23 reduced to 25 years to life.  (Answer at 2.)  Petitioner also was ordered to pay a fine of $10,000.

24      In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court

25 made clear that, in the context of an Eighth Amendment challenge to a prison sentence, the "only

26 relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of'

1  framework is the gross disproportionality principle, the precise contours of which are unclear,

2  applicable only in the 'exceedingly rare' and 'extreme' case." Andrade, 538 U.S. at 73 (citing

3  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983);

4  and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The Andrade Court concluded that two

5  consecutive 25-years-to- life sentences with the possibility of parole, imposed under California's

6  three-strikes law following two petty theft convictions with priors, did not amount to cruel and

7  unusual punishment.  Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a

8  sentence of 25 years to life imposed for felony grand theft under California's three-strikes law did

9  not violate the Eighth Amendment).  "Outside the context of capital punishment, successful

10 challenges to the proportionality of particular sentences have been exceedingly rare."  Rummel,

11 445 U.S. at 272.

12         In Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), the United States Court of

13 Appeals for the Ninth Circuit held, post-Andrade, that a three strike sentence of twenty-five years

14 to life in prison for a third shoplifting offense, a "wobbler" under state law[6], constituted cruel and

15 unusual punishment.  In Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), the court of appeals

16 distinguished Ramirez, finding that the petitioner in Rios had a "lengthy criminal history," had

17 "been incarcerated several times," and because the strikes used to enhance the petitioner's

18 sentence had "involved the threat of violence."  Id. at 1086.

19         Like the petitioners in Rios and Ramirez, in the instant case petitioner's

20 commitment offense, possession of methamphetamine, is also a "wobbler" under California law.

21 See Ferreira v. Ashcroft, 382 F.3d at 1051.  The record reflects that petitioner's criminal history,

22 including the strikes that support his sentence, is more similar to the petition in Rios than the

23 petitioner in Ramirez.  Petitioner has a lengthy criminal history including numerous prior sex

24 offenses, and petitioner was on parole at the time of the current offense.  (Answer, Ex. 21.)  As

25

26         [6] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
   under applicable law.  See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1   noted in the state court's decision issued February 25, 1997,

2          the trial court recognized it had discretion to reduce the crime to a
3          misdemeanor but rejected [petitioner's] claims of rehabilitation and
           found his history of criminal activity did not justify the reduction.
4          In light of [petitioner's] multiple prior convictions and admitted
           substance abuse, the court reasonably could conclude that the
5          community's protection is best served by a felony sentence.
           Accordingly, the court did not abuse its discretion in refusing to
6          reduce the offense to a misdemeanor.

7   (Answer, Ex. 3.)

8          Moreover, petitioner's sentence of 25 years to life with prior serious felony

9   convictions does not give rise to an inference of gross disproportionality because courts have

10  upheld longer sentences for repeat offenders who committed non-violent offenses.  See, e.g.,

11  Rummel, 445 U.S. at 284-85 (upholding life sentence of recidivist convicted of fraudulent use of

12  credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false

13  pretenses); United States v. Carr, 56 F.3d 38, 39 (9th Cir. 1995) (upholding sentence of 22 years

14  upon conviction for sale of 66.92 grams of cocaine base with enhancement for two previous

15  convictions for minor drug sales); Bland, 961 F.2d at 128-29 (upholding sentence of life without

16  parole for being felon in possession of firearm and having a career criminal history).

17         It appears to this court that petitioner's commitment offense was a very minor

18  offense.  However, as noted above, the circumstances under which a prison sentence violates the

19  Eighth Amendment are "exceedingly rare."  Given the legal authority that binds this court,

20  petitioner's criminal history precludes a finding that his sentence violates the Eighth

21  Amendment.

22         For the foregoing reasons, the court will recommend that petitioner's thirteenth

23  and fourteenth claims for relief be denied.

24  /////

25  /////

26  /////

1        c.  Prior Strike Conviction Unconstitutional

2               In his fifteenth claim, petitioner contends his prior strike

3  conviction was unconstitutional.  However, the Supreme Court has held that relief is generally

4  unavailable to a state prisoner through a petition for a writ of habeas corpus when the prisoner

5  challenges his current sentence on the ground it was enhanced based on an allegedly

6  unconstitutional prior conviction for which the petitioner is no longer in custody.  Lackawanna

7  County District Attorney v. Coss, 532 U.S. 394 (2001).  Here, petitioner attempts to challenge his

8  1986 conviction of rape, oral copulation and witness intimidation, claiming it was

9  unconstitutional.  Petitioner's claim can be read as asserting a challenge to the 1995 conviction as

10 enhanced by the allegedly invalid prior conviction, thus satisfying the "in custody" requirement

11 for federal habeas jurisdiction.  Maleng v. Cook, 490 U.S. 488, 493-94 (1989)(per curiam).

12 However, because petitioner's prior conviction is "no longer open to direct or collateral attack in

13 its own right because [petitioner] failed to pursue those remedies while they were available or

14 because the [petitioner] did so unsuccessfully, the conviction may be regarded as conclusively

15 valid."  Lackawanna, 532 U.S. at 403.[7]  Thus, this claim should also be denied.

16        d.  Equal Protection and Due Process Violations

17               Petitioner alleges that the failure of the state court to properly apply the Three

18 Strikes Law to petitioner violated his equal protection rights.  Petitioner argues that the

19 prosecution violated petitioner's rights by failing to offer petitioner a plea bargain, and that

20 petitioner's equal protection rights were violated  because other prosecuting attorneys throughout

21 the state routinely offer plea bargains to other similarly situated defendants.

22

---

23        [7]  Although the Supreme Court acknowledged that they previously "left open the
possibility that relief might be appropriate in rare circumstances," Lackawanna at 397 citing
24 Daniels v. United States, 532 U.S. 374 (2001), the instant case does not present such a
circumstance.  Lackawanna carved out an exception for those cases where there was a failure to
25 appoint counsel in violation of the Sixth Amendment.  Lackawanna 532 U.S. at 404.  Petitioner's
case does not fall within that exception because he had counsel during his 1986 trial.  He doesn't
26 meet the other exception either.  Id. at 405 (claim of actual innocence).

1    The question in this federal habeas corpus proceeding is not whether the state

2  appellate court was correct in its determination; this court is bound by California's interpretation

3  of its state law.  See McSherry v. Block, 880 F.2d 1049, 1052 (9th Cir. 1989).  Rather, this court

4  must decide whether the state court's decision is contrary to or an unreasonable application of

5  clearly established federal law.

6    The Equal Protection Clause of the Fourteenth Amendment "commands that no

7  State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

8  essentially a direction that all persons similarly situated should be treated alike."  City of

9  Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  The conscious exercise of some

10  selectivity by state prosecuting authorities in the application of a recidivist statute is not, in itself,

11  a violation of equal protection absent selection deliberately based upon unjustifiable standards

12  such as race, religion, or other arbitrary classification.  Oyler v. Boles, 368 U.S. 448, 456 (1962);

13  see also United States v. LaBonte, 520 U.S. 751, 761 (1997) ("Such discretion is an integral

14  feature of the criminal justice system, and is appropriate, so long as it is not based upon improper

15  factors."); United States v. Wicks,132 F.3d 383, 389-90 (7th Cir. 1997). [8]

16    Here, petitioner's argument is not founded on any disparate treatment based on the

17  statute but, rather, on the decision by individual prosecutors as to how and when to invoke the

18  provisions of California's Three Strikes law, i.e. by offering plea bargains to some criminal

19  defendants, but failing to offer one to petitioner.  This does not amount to a violation of

20  petitioner's constitutional rights.  In petitioner's case, the record does not support the notion that

21  the prosecutor violated the law or applied an improper classification in charging petitioner as he

22  did.  Therefore, petitioner did not receive unequal or unfair treatment based on the varying

23

24    [8] "There must be an allegation of invidiousness or illegitimacy in the statutory scheme
before a cognizable [equal protection] claim arises."  McQueary v. Blodgett, 924 F.2d 829, 835
(9th Cir. 1991).  Federal courts employ a strong presumption that governmental classifications do

25  not violate the equal protection clause unless they burden a suspect class or a fundamental
interest.  City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).

26

1  implementation policies of the district attorneys in the state of California.  Petitioner has failed to

2  demonstrate that his prosecution under the Three Strikes law was based on unjustifiable

3  standards or that California applies the law unevenly in a systematic manner.

4  Moreover, it is well-established that criminal defendants have no constitutional

5  right to a plea bargain.  Weatherford v. Bursey, 429 U.S. 545, 561 (1977); King v. Brown, 8 F.3d

6  1403, 1408 (9th Cir. 1993); United States v. Anderson, 993 F.2d 1435, 1439 (9th Cir. 1993); see

7  also Cal. Penal Code § 1192.5 (providing for court's withdrawal of its approval of a plea prior to

8  sentencing with the defendant being given the opportunity to then withdraw plea).  Accordingly,

9  petitioner is not entitled to relief on this claim.

10  For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

11  petitioner's application for a writ of habeas corpus be denied.

12  These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED:  June 8, 2005.

21

22

23  UNITED STATES MAGISTRATE JUDGE

24  001

25  tugg2080.157

26

25